## Billiard's Estate

■■■■■■■■■■

*Vincent P. McDevitt*, for petitioner.
*Martin G. Stein*, contra.

LADNER, J., March 29, 1940.—This matter came before the court on petition to vacate our decree appointing appraisers to value real estate chosen by the surviving spouse for his $5,000 exemption. From the petition, and answer filed thereto, the following undisputed facts appear.

Decedent, Elizabeth M. Billiard, died intestate, married but without issue, on May 5, 1939, seized in fee of premises 305 Berks Street, Philadelphia. On June 15, 1939, petitioners (brothers and sister of decedent) instituted an action of ejectment in Common Pleas Court No. 6 of Philadelphia County as of June term, 1939, no. 1231. The declaration in ejectment averred in substance that the surviving husband had, for more than one year prior to the death of his wife, wilfully neglected or reffused to provide for her; that he was therefore not entitled to any claim or interest in her real or personal estate; that plaintiffs were consequently decedent's sole next of kin, and as such claimed exclusive title to decedent's real estate. In due course judgment was entered against defendant (the surviving spouse) for want of an appearance and plea. Thereafter, a writ of possession was issued and executed by the sheriff.

Afterwards, on December 1, 1939, this court, pursuant to petition of defendant (surviving spouse), en-

tered a decree appointing appraisers to value the real estate which was the subject matter of the ejectment suit, and which defendant now claims as his $5,000 allowance under section 2 of the Intestate Act of June 7, 1917, P. L. 429, and directed notice to be given to the next of kin. Plaintiffs in the ejectment suit (next of kin) then filed the petition now before us, averring that in view of the facts above recited we were without jurisdiction to appoint appraisers and prayed that our decree of December 1, 1939, appointing appraisers, be vacated.

From the answer filed by the surviving spouse to this petition, the following additional facts appear, viz., that on October 31, 1939, Court of Common Pleas No. 6 granted a rule to show cause why the default judgment in ejectment should not be opened and defendant let into a defense, which rule is still pending and undisposed of. The pleadings before us do not disclose that letters of administration were ever issued to anyone, and it was stated at the argument that decedent left no other assets and that there are no creditors.

On behalf of petitioners, it is argued that we ought to vacate the decree appointing appraisers because the judgment in ejectment is res adjudicata of the question whether the surviving husband had by his conduct forfeited all title and interest in his deceased wife's estate. On the other hand, counsel for the surviving spouse argues that the judgment in ejectment is not res adjudicata because it is a nullity, in that this court alone has exclusive jurisdiction over the real estate of decedent.

A fact once established by a court of competent jurisdiction cannot be reëxamined in another proceeding between the same parties, either in the same court (Havir's Estate, 283 Pa. 292), or any other tribunal: Bowers' Estate, 240 Pa. 388; Shaffer v. Wilmore Coal Co., 246 Pa. 550. Such effect of the judgment here, however, is suspended by the pending rule to open the judgment. We examined the record of the common pleas court and have

ascertained that the petition there raises no question of the jurisdiction of that court. If it had, we would have refrained from deciding the question of jurisdiction until the common pleas court had the first opportunity to do so. But as it is raised here, we must decide it.

The precise question here presented is, whether a surviving spouse and collateral next of kin of an intestate are restricted to the orphans' court for an adjudication of their respective rights concerning decedent's real estate which is the sole asset of which she died seized. No case has been cited by either counsel which is sufficiently apposite to control, so that the question, evidently novel, must be decided upon general principles relating to the jurisdiction of this court.

While the orphans' court has been called a court of limited jurisdiction, this was explained in the leading case of Shollenberger's Appeal, 21 Pa. 337, at 341, to be true only "if regard be had to the *derivation* of its powers, for it possesses none inherently, and exercises such only as are conferred by or implied from legislation; and it is true also as to the *subjects* of its jurisdiction, for these are set down in the statutes; but within its appointed orbit its jurisdiction is exclusive, and therefore necessarily as extensive as the demands of justice."

The exclusiveness of our jurisdiction results from either the express language of the Orphans' Court Act or the necessary implication drawn therefrom in the light of the history and purposes giving rise to the establishment of the court, as to which see historical review in Horner et al. v. Hasbrouck, 41 Pa. 169, or from the operation of the Act of March 21, 1806, 4 Sm. L. 326, sec. 13, 46 PS §156, which declares that specific statutory remedies must be interpreted as exclusive. Illustrating the former are such cases as Dundas' Appeal, 73 Pa. 474, Tyson, etc., v. Rittenhouse et al., etc., 186 Pa. 137, Mauser et al. v. Mauser et ux., 326 Pa. 257, and Mussleman's Appeal, 65 Pa. 480. Illustrating the latter are Gourley

v. Kinley, 66 Pa. 270, Thomas v. Simpson, 3 Pa. 60, and Seider et al. v. Seider, 5 Whart. 208.

We have not been referred to any statutory provisions as establishing our exclusive jurisdiction under the circumstances of this case. It is true that section 9(e) of the Orphans' Court Act of June 7, 1917, P. L. 363, as did its predecessor, the Act of March 29, 1832, P. L. 190, grants us jurisdiction in the "distribution of the assets and surplusage of the estates of decedents among creditors and others interested", which has been held to be so exclusive that no matter of settlement touching the administration of an estate can be drawn within the power of the common pleas court: Dundas' Appeal, supra; Whiteside v. Whiteside, 20 Pa. 473; Kittera's Estate, 17 Pa. 416. But the application of this provision is not involved in the present case. There is here no personal representative, no personal property to be accounted for, no application for sale of real estate for payment of debts by any creditor nor, until the petition for appointment of appraisers, was any attempt made to bring decedent's real estate within the grasp of this court. It is not in every case which may incidentally bear upon the settlement of estates that our jurisdiction is exclusive: Overbrook Heights B. & L. Assn. v. Wilson et al., 333 Pa. 449, 463.

The real estate of an intestate descends to heirs without the necessity of any distributive decree of this court. Even the $5,000 allowance vests in the surviving spouse, and is not dependent upon a claim as in the case of a widow's exemption: Murphy's Estate, 19 D. & C. 343. So also the excess of the estate over $5,000 in value vests in the spouse and next of kin. It is of course to be understood that such vesting is subject to the superior right of decedent's creditors to require the sale thereof for the payment of decedent's debts, and when so required our jurisdiction supersedes all other: Horner et al. v. Hasbrouck, supra.

Our jurisdiction or power to administer, control, or distribute the real estate of an intestate depends upon it being invoked for a proper purpose, as for example, where real estate must be sold in order to pay debts or legacies, or where upon application of some of the heirs partition proceedings are in order. Still another instance is the procedure provided by the Intestate Act of 1917, supra, sec. 2(d), under which jurisdiction of this court may be invoked for the purpose of establishing the $5,000 allowance granted to the surviving spouse out of decedent's real estate. Had the surviving spouse in this case invoked our jurisdiction in order to establish his $5,000 allowance out of decedent's real estate *before* the ejectment action had been begun, our jurisdiction would have been complete and exclusive. This because the express remedy granted under this act must necessarily be interpreted by reason of the Act of 1806, supra, to exclude all others. But neither the Intestate Act nor any other contains any provision authorizing the *next of kin* to apply to this court for such purpose.

If the next of kin in this case had conceded the surviving husband's right to inherit, then our jurisdiction to determine his share could have been invoked by partition proceedings of which our jurisdiction is not exclusive: Section 1, Orphans' Court Partition Act of June 7, 1917, P. L. 337. See also Stadelman's Estate, 23 Dist. R. 403, which holds that jurisdiction in partition cases must be conceded to the court to which application is first made. When partition proceedings afford a remedy, ejectment does not lie: See Gourley v. Kinley, supra; Seider et al. v. Seider, supra, and Thomas v. Simpson, supra. Here, however, the next of kin, while admitting defendant in the ejectment proceedings was a surviving spouse, deny his right to inherit because disqualified under section 5 of the Intestate Act. If disqualified to inherit, his position would be the same as though a stranger to decedent were in possession. Heirs of a decedent may maintain ejectment against a stranger for the land of which their

ancestor died seized: Stein's Lessee v. North, 3 Yeates 324; Webster v. Webster, 53 Pa. 161; Spencer et al. v. Jennings et al., 139 Pa. 198. And whenever statutory provisions fail to afford a remedy, the common-law remedy remains available: Lewis et al. v. Lewis et al., 13 Pa. 79; Thomas v. Simpson, supra.

We, therefore, rule that if application for appointment of appraisers had been made to this court by the surviving spouse *before* the institution of the ejectment action against him, our power to determine everything standing in the way of the disposition of that petition would have made our jurisdiction exclusive: This both because a specific and complete remedy would then have been open to all parties in interest, as well as the "rule of comity": Stadelman's Estate, supra. We hold further that even if the application had been made to us by the surviving spouse *after* the commencement of the ejectment proceedings but before judgment, we would have the discretionary power to proceed with the specific statutory remedy thus afforded without awaiting the outcome of the ejectment suit: This, for the reasons which have given rise to the established practice permitting this court to proceed with its audits and to compel creditors to prove their claims here without waiting for the conclusion of proceedings that they may have previously commenced elsewhere: Hammett's Appeal, 83 Pa. 392.

In the case before us, a judgment has been rendered by a court of competent jurisdiction. If that court confirms its judgment the facts established thereby are res adjudicata. But since that effect is stayed by the pending rule to open that judgment we make the following order in the premises: .

### Order

Petition to vacate the decree heretofore granted appointing appraisers, is dismissed without prejudice and with leave to the next of kin to apply again if the rule to open judgment pending in Court of Common Pleas No. 6

is discharged. In the meanwhile, further proceedings by the surviving spouse under our decree of December 1, 1939, are stayed with leave to apply to this court for a vacation of this stay should the rule to open judgment now pending in the common pleas court be made absolute.